IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 1:09-CR-0072-03 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **DESHAWN LIVINGSTON,** | : | |
| | : | |
| Petitioner. | : | |

**MEMORANDUM**

Presently before the court in the above-captioned matter is petitioner DeShawn Livingston's ("Livingston") *pro se* motion to vacate, set aside, or correct his sentence (Doc. 515) pursuant to 28 U.S.C. § 2255,[1] alleging ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. For the reasons that follow, Livingston's motion will be denied in part. However, the court will defer ruling on the remaining claim pending an evidentiary hearing on the issue of the effective assistance of counsel during plea negotiations.

**I.  Factual Background and Procedural History**

On February 25, 2009, Livingston was indicted for (1) criminal conspiracy in violation of 18 U.S.C. § 371, (2) Hobbs Act robbery in violation of 18 U.S.C. § 1951, (3) possession of a firearm in furtherance of crimes of violence in violation of 18 U.S.C. § 924(c)(1), and (4) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). (Doc. 1). On March 17, 2009, Livingston entered a plea of not guilty

---

[1] "A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255.

to all charges. (Doc 56). Livingston subsequently filed a motion to suppress (Doc. 211), claiming, *inter alia*, that law enforcement's entry into his apartment and the subsequent seizure of a firearm violated the Fourth Amendment. (Doc. 211 ¶¶ 3-5).

The court held a suppression hearing on January 22 and February 19, 2010. (See Doc. 257). At the hearing, the government offered evidence that Livingston's then-girlfriend, Anneliese Scherrer ("Scherrer"), contacted the police on April 20, 2008 with a domestic violence complaint. (Doc. 257 at 4). One of the responding officers, Richard Wilson, testified that Scherrer lived in an apartment with Livingston, whom she described as violent. (Id. at 4-6, 14-15). Scherrer also informed the officers that Livingston always slept within reach of a handgun. (Id. at 6, 9). Without prompting, Scherrer provided officers with a key and a detailed description of the apartment. (Id. at 6-10). The officers then used this key to enter the apartment and arrest Livingston. (Id. at 11-13). The government also introduced evidence to show that the seized firearm was obtained during a search incident to Livingston's arrest. (Id. at 12-13, 31-33, 38-39). By memorandum and order dated April 30, 2010, the court denied the motion to suppress with respect to the initial entry and the firearm. (Doc. 291).

On August 17, 2010, Livingston proceeded to a jury trial. (Doc. 388). The jury returned a guilty verdict on August 26, 2010 on all counts. (Doc. 403). On January 13, 2011, the court sentenced Livingston to 461 months imprisonment, $5,000 restitution, and five years of supervised release. (Doc. 466). On January 18, 2011, Livingston appealed his conviction and sentence on several grounds, including the

denial of his motion to suppress. (Doc 467). The Third Circuit Court of Appeals denied the appeal and affirmed the court's judgment on September 27, 2011. (Doc. 506); see United States v. Livingston, 445 F. App'x 550 (3d Cir. 2011). Livingston filed a petition for writ of certiorari, which the United States Supreme Court denied on April 30, 2012. See Livingston v. United States, 132 S. Ct. 2100 (2012). On May 2, 2013, Livingston timely filed the instant motion (Doc. 515) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel.[2] The motion has been fully briefed and is ripe for disposition.

## II.   Legal Standard

A petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 is the appropriate vehicle by which a defendant in federal custody may challenge the legality of a conviction or sentence. See 28 U.S.C. § 2255; In re Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997). When reviewing a motion to vacate, the court must accept the truth of the petitioner's factual allegations unless clearly frivolous based on the

---

[2] Where a defendant has taken a direct appeal, the one-year limitations period begins to run "on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires." United States v. Davies, 394 F.3d 182, 186 n.2 (3d Cir. 2005) (quoting Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999)); Sup. Ct. R. 13. In the instant case, the Supreme Court denied Livingston's timely filed petition for certiorari on April 30, 2012. (See Doc. 515 at 4-5); Livingston v. United States, 132 S. Ct. 2100 (2012). The pending motion was postmarked on April 28, 2013 and, therefore, was filed within the one-year limitations period. See R. Governing § 2255 Cases R. 3(d) (stating that a paper filed by an inmate is "timely if deposited in the institution's internal mailing system on or before the last day for filing.").

3

existing record. Gov't of V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). However, the court is required to order an evidentiary hearing "unless the motion and files and records of the case show conclusively that the [petitioner] is not entitled to relief." Id.; see also 28 U.S.C. § 2255(b).

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). This right to effective assistance of counsel also extends to the first appeal. Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). In Strickland, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. Strickland, 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his or her counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. See id.

In evaluating the first prong of the Strickland test, the court must be "highly deferential" toward counsel's conduct. Id. at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by

4

*post-hoc* determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 446 U.S. at 689).  Notably, courts will not deem counsel ineffective for failing to raise a meritless argument.  Strickland, 466 U.S. at 691; United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  See Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different.  See Thomas v. Varner, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the Strickland test.  Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002).  The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to considered the second prong of the test if the petitioner is unable to satisfy the first one.  Strickland, 466 U.S. at 697.

**III. Discussion**

In the instant motion, Livingston alleges ineffective assistance of counsel on the following grounds: (1) his appellate counsel failed to argue alternative theories

to suppress the warrantless arrest and search and seizure of evidence; (2) his trial counsel also failed to raise other arguments in the initial suppression hearing; (3) his trial counsel did not move the court for a severance of Livingston's trial from his co-defendant's trial; and (4) his trial counsel threatened to withdraw and misled Livingston regarding the merits of his case and the government's willingness to negotiate in order to prevent plea negotiations. The court will address these issues *seriatim*.

### A. Appellate Counsel's Failure to Support Suppression

Livingston's first ineffective assistance of counsel claim arises from appellate counsel's alleged failure to argue and to present evidence of an alternative theory for suppression. (Doc. 543 at 8). Specifically, he contends that his appellate counsel should have argued that the police impermissibly created exigent circumstances to justify their entry into his apartment to arrest him and the subsequent seizure of a firearm. (Id. at 8-9).

In the case *sub judice*, however, the police were not required to present exigent circumstances in order to enter Livingston's apartment without a search warrant. Generally, "warrantless searches of a home are impermissible absent consent *or* exigent circumstances." Steagald v. United States, 451 U.S. 204, 216 (1981) (emphasis added). Officers may enter a home to effectuate an arrest or search without a warrant with voluntary consent. See Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). Consent may be obtained "either from the individual whose

6

property is searched, or from a third party" who possesses actual or apparent "joint access or control for most purposes." Id. at 181-82 (internal quotations and citation omitted). Moreover, limited warrantless searches are also permitted in the context of an arrest. Chimel v. California, 395 U.S. 752, 762-64 (1969); New York v. Belton, 453 U.S. 454, 457 (1981). During an arrest, the police may conduct a "contemporaneous search without a warrant of the person arrested and of the immediately surrounding area" to remove any weapons or prevent destruction of evidence. Belton, 453 U.S. at 457 (citing Chimel, 395 U.S. at 763); United States v. Myers, 308 F.3d 251, 266-67 (3d Cir. 2002).

On April 20, 2008, Livingston's girlfriend, Anneliese Scherrer, contacted the police with a domestic violence complaint. (Doc. 543 at 12; see Doc. 257 at 4). Scherrer indicated that she shared the apartment with Livingston, provided a detailed layout of the apartment, and gave officers a key to the apartment. (Doc. 257 at 4-10). The police subsequently used this key to enter the apartment and arrest Livingston. (Id. at 11-13). While placing Livingston under arrest, officers conducted a search of the immediately surrounding area and discovered a gun under an air mattress. (Id. at 13).

Livingston's argument that the police created exigent circumstances to enter his apartment is meritless. The record clearly demonstrates that the government did not seek to justify its entry into Livingston's apartment to arrest him and search his room. Instead, the government received consent to enter the apartment from

Livingston's girlfriend, who possessed actual authority over the premises, and subsequently performed a search incident to Livingston's arrest.  Because the government received proper consent to enter the apartment, any argument regarding the creation of exigent circumstances is both irrelevant and unnecessary.  The court finds that appellate counsel was not ineffective for failing to raise a meritless argument.[3]

### B. Trial Counsel's Failure to Use Correct Legal Standard for Suppression

Livingston also argues that his trial counsel was ineffective for failing to raise the exigent circumstances argument in support of the initial motion to suppress. (Doc. 543 at 9-10).  For the reasons previously discussed, the court finds this argument unavailing.

Alternatively, Livingston argues that, if his girlfriend provided consent for entry into the apartment, his trial counsel failed to argue that, under Georgia v. Randolph, 547 U.S. 103 (2006), the police may not enter a house when one resident consents to a search while the other resident refuses.  Id. at 106.  However, Randolph applies only to a "physically present co-occupant's stated refusal to

---

[3] Livingston also argues that his appellate counsel was ineffective for failing to argue suppression based on Florida v. Wells, 495 U.S. 1 (1990). (Doc. 543 at 8-9). In Wells, however, the Supreme Court addressed the unrelated issue of whether it was reasonable for police to search a locked suitcase found while conducting an inventory of a seized automobile.  Wells, 495 U.S. at 1-2.  The court finds Wells entirely inapplicable and inapposite to Livingston's motion to suppress.

permit entry." Id.; see United States v. Stabile, 633 F.3d 219, 231 (3d Cir. 2011) (noting that the defendant's absence did not nullify consent because Randolph applies only when a "physically present" resident refuses consent). In Illinois v. Rodriguez, the Supreme Court held that the search of an apartment is reasonable when a resident with common authority gives consent while the defendant is asleep inside at the time of entry. Rodriguez, 497 U.S. at 179-80, 188-89; see also United States v. Davis, 283 F. App'x 370, 373 (6th Cir. 2008) (finding that defendant who was asleep and did not respond to police officer's requests to enter was unavailable to refuse consent).

In the case at bar, Livingston was asleep in the apartment when police entered with the key his girlfriend gave them; he only awoke to meet the officers once they were inside the apartment. (Doc. 257 at 11-12, 26, 29-30). Under the circumstances, Livingston clearly did not vitiate his girlfriend's consent to the police entry. Although he may have refused to consent had he been awake, Livingston is not entitled to relief simply because he later objects to the use of evidence obtained through a consent search. See Randolph, 547 U.S. at 106. The court concludes that Livingston's trial counsel was not ineffective for failing to raise these meritless claims.

### C. Trial Counsel's Failure to Move for Severance

Livingston's third ineffective assistance of counsel claim arises from trial counsel's failure to request a severance from his co-defendant. (Doc. 543 at 15).

9

Federal Rule of Criminal Procedure 8 allows for the joinder of multiple defendants in the same indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). "There is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993); see also United States v. Lore, 430 F.3d 190, 204-05 (3d Cir. 2005) (explaining that "joint trials promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts" (internal citation omitted)). In particular, when all the defendants are charged in a single conspiracy, a joint trial appropriately "aid[s] the finder of fact in determining the full extent of the conspiracy and prevent[s] the tactical disadvantage to the government from disclosure of its case." United States v. Voigt, 89 F.3d 1050, 1094 (3d Cir. 1996) (internal quotations and citations omitted); see also United States v. Scott, No. 1:09-CR-072-01, 2009 WL 4269425, at *1 (M.D. Pa. Nov. 24, 2009).

Under Rule 14, the court may sever properly joined charges if the joinder "appears to prejudice a defendant or the government." FED. R. CRIM. P. 14(a). The court will sever charges "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539; United States v. Urban, 404 F.3d 754, 775 (3d Cir. 2005). However, "[t]he mere

introduction of other crimes evidence against one defendant does not entitle a co-defendant to a separate trial." United States v. McGlory, 968 F.2d 309, 340 (3d Cir. 1992); see Lore, 430 F.3d at 205 (noting that "a defendant is not entitled to a severance merely because evidence against a co-defendant is more damaging than the evidence against the moving party") (quoting United States v. Somers, 496 F.2d 723, 730 (3d Cir. 1974)).

To obtain a severance, the defendant must "pinpoint clear and substantial prejudice resulting in an unfair trial." United States v. Riley, 621 F.3d 312, 335 (3d Cir. 2010) (quoting McGlory, 968 F.2d at 340)); see Urban, 404 F.3d at 775 (noting that "defendants seeking to sever bear a 'heavy burden'"); United States v. Avila, 610 F. Supp. 2d 391, 397 (M.D. Pa. 2009). Clear and substantial prejudice exists if the jury would be unable "to compartmentalize the evidence as it relates to separate defendants." United States v. Davis, 397 F.3d 173, 182 (3d Cir. 2005); see also Avila, 610 F. Supp. 2d at 397 (quoting Lore, 430 F.3d at 205). However, even if the defendant establishes prejudice, "Rule 14 does not require severance . . . rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 538-39; see also Scott, 2009 WL 4269425, at *2.

Livingston argues that his trial counsel should have moved to sever his trial from his co-defendant's trial because there was no credible evidence of his participation in the conspiracy to rob drug dealers for which he was jointly indicted.

(Doc. 543 at 15-17).  Livingston contends this lack of evidence, coupled with "spill-over" from the evidence presented against his co-defendant, caused him prejudice and denied him the right to a fair trial.  (Id.)

Criminal conspiracy occurs when two or more persons conspire to commit a federal offense, and one or more of such persons commit any act to further the object of the conspiracy.  See 18 U.S.C. § 371; see also Braverman v. United States, 317 U.S. 49, 53 (1942); United States v. Vega, 184 F. App'x 236, 239 (3d Cir. 2006).  The three elements of conspiracy are: "(1) an agreement between two or more persons to commit a federal crime, (2) knowledge of the purpose of the conspiracy and a deliberate decision to join in that purpose, and (3) commission of an 'overt act' by one of the participants in furtherance of the conspiracy."  Vega, 184 F. App'x at 239-40; see also United States v. Rigas, 605 F.3d 194, 206 (3d Cir. 2010); United States v. McKee, 506 F.3d 225, 237-43 (3d Cir. 2007).  The court notes that "[t]he elements of conspiracy. . . can be proven entirely by circumstantial evidence."  United States v. Brodie, 403 F.3d 123, 134 (3d Cir. 2005).

Contrary to Livingston's assertions, the government provided substantial circumstantial evidence of his involvement in a criminal conspiracy.  (See Doc. 544 at 10).  At trial, Scherrer testified that she heard Livingston and his co-defendant Donald Scott ("Scott") planning to commit one of the robberies.  (See Doc. 487 at 21-22, 24).  Furthermore, following a robbery, she saw Livingston and Scott

12

carrying stolen goods into Livingston's apartment. (See id. at 13-14, 18). These stolen goods were later recovered from Livingston's apartment. (See id. at 13, 18). In addition, a victim specifically identified Livingston as one of the two men who had robbed her home. (See id. at 12-13). Finally, cell phone records showed communication between Livingston and Scott near the location of the robberies at the time they were committed. (See id. at 23-24).

Moreover, Livingston does not provide any evidence that joinder resulted in "clear and substantial prejudice" necessary to sever the trial. Without such prejudice, no grounds existed for his trial counsel to move for a severance under Rule 14. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Pursuant to Strickland, the court will not second-guess the trial counsel's decision not to move for a severance. Id. at 689 ("[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or

omission was unreasonable"). Accordingly, the court concludes that Livingston's trial counsel acted within the wide range of reasonable professional assistance.[4]

### D.  Trial Counsel's Failure to Pursue Plea Negotiations

In his final ineffective assistance of counsel claim, Livingston contends that trial counsel prevented him from engaging in plea negotiations. (Doc. 543 at 18). The right to effective assistance of counsel extends to the plea negotiation process. Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012) (stating that the right to counsel extends to all critical stages of criminal proceedings, including arraignments, post-indictment interrogations and entry of a guilty plea). In the context of a guilty plea, counsel must "give a defendant information sufficient 'to make a reasonably

---

[4] There is no evidence that a severed trial would have produced a different result. See Davis, 397 F. 3d at 182 (holding that the relevant inquiry for prejudice is whether the jury was able to "compartmentalize the evidence as it relates to separate defendants); Lore, 430 F.3d at 205-06 (considering the court's instructions to the jury to assess evidence as to each defendant and each count separately). Indeed, the record demonstrates that the jury was able to consider the charges against each defendant separately. The court instructed the jury to consider the evidence against each defendant separately and to weigh the evidence for each charge individually. (Doc. 544 at 10). The court presumes that the jury followed those instructions. See Lore, 430 F.3d at 206 (regarding such jury instructions "as persuasive evidence that refusals to sever did not prejudice the defendant"). The jury further demonstrated its ability to compartmentalize the evidence when it found Livingston guilty of the first Hobbs Act Robbery and possession of a firearm in furtherance of the robbery, but acquitted co-defendant Scott of the same charges. (Doc. 403); see United States v. Scott, 266 F. App'x 206, 209 (3d Cir. 2008) (noting that the jury demonstrated an ability to compartmentalize evidence when it convicted the defendant on one charge and acquitted him on the remaining two). Thus, Livingston also fails to satisfy the prejudice prong of the Strickland test.

14

informed decision whether to accept a plea offer.'" Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013) (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)). The Third Circuit views the decision regarding a plea bargain offer as one for the accused to make and has ruled that "failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards." United States *ex rel.* Caruso v. Zelinsky, 689 F.2d 435, 438 (3d Cir. 1982); see also United States v. Martin, 454 F. Supp. 2d 278, 284 (E.D. Pa. 2006). Absent any relevant precedent, the court interprets a defendant's right to reject or accept a plea bargain to also extend to the right to decide whether to engage in plea negotiations with effective assistance of counsel. See Colson v. Smith, 438 F.2d 1025, 1028 (5th Cir. 1971) ("It is clear that a defendant is entitled to the effective assistance of counsel in determining how to plead and in making his plea.").

To satisfy the prejudice requirement, the petitioner must show (1) that "there is a reasonable probability that a plea offer would have been presented to the court" but for counsel's erroneous advice, meaning that the petitioner "would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances"; (2) "that the court would have accepted its terms"; and (3) "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler v. Cooper, 132 S. Ct. 1376, 1384-85 (2012); Shotts, 724 F.3d at 376.

Livingston claims that his trial counsel prevented him from conducting plea negotiations with the government.  More specifically, he alleges that: (1) his trial counsel threatened to withdraw from his case if he pursued plea negotiations with the government; (2) his trial counsel provided erroneous advice about the nature of the charges against him, the punishment if convicted, and the weight of evidence against him; and (3) his trial counsel informed him that the government was not receptive to plea negotiations.  (Doc. 543 at 18-20).

Neither the record nor the parties' briefs establish sufficient facts for the court to assess whether the trial counsel was ineffective in failing to engage in plea negotiations and whether Livingston suffered prejudice.  The court will therefore defer ruling on this claim pending an evidentiary hearing on the nature and extent of counsel's assistance during plea negotiations.  See 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); see also United States v. Mangiardi, 173 F. Supp. 2d 292, 316-17 (M.D. Pa. 2001) (holding an evidentiary hearing to resolve factual ambiguities regarding whether trial counsel refused to let defendant testify at trial or erroneously persuaded defendant not to testify); United States v. Rodriguez, 153 F. Supp. 2d 590, 595 (E.D. Pa. 2001) (reserving ruling under Strickland pending evidentiary hearing on § 2255

claim that trial counsel refused to let defendant testify). In anticipation of the evidentiary hearing, the court will appoint an attorney to represent petitioner pursuant to the Rules Governing Section 2255 Cases. See R. GOVERNING § 2255 CASES R. 8(c).

## IV.   Conclusion

For the above-stated reasons, the court will deny in part Livingston's motion (Doc. 515) to vacate, set aside, or correct a sentence for ineffective assistance of counsel. The court will also defer ruling on Livingston's ineffective assistance of counsel claim regarding plea negotiations pending an evidentiary hearing.

An appropriate order follows.


      /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        March 4, 2014