# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 1:09-CR-0072-03** |
| v. | (Chief Judge Conner) |
| **DESHAWN LIVINGSTON,** | |
| **Petitioner** | |

## MEMORANDUM

Presently before the court in the above-captioned matter is petitioner DeShawn Livingston's ("Livingston") *pro se* motion (Doc. 515) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255,[1] alleging ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. For the reasons that follow, the court will deny Livingston's motion in its entirety.

**I.   Factual Background and Procedural History**

On February 25, 2009, Livingston was indicted for (1) criminal conspiracy in violation of 18 U.S.C. § 371; (2) Hobbs Act robbery in violation of 18 U.S.C. § 1951; (3) possession of a firearm in furtherance of crimes of violence in violation of 18 U.S.C. § 924(c)(1); and (4) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). (Doc. 1). On March 17, 2009, Livingston entered a plea of not guilty to all charges. (Doc 56).

On August 17, 2010, Livingston proceeded to a jury trial. (Doc. 502). The jury

---

[1] This statute provides that "[a] prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

returned a guilty verdict on August 26, 2010 on all counts. (Doc. 403).² On January 13, 2011, the court sentenced Livingston to 461 months' imprisonment, $5,000 restitution, and five years of supervised release. (Doc. 466). On January 18, 2011, Livingston appealed his conviction and sentence on several grounds, including the denial of his motion to suppress. (Doc 467). The Third Circuit Court of Appeals denied the appeal and affirmed the court's judgment on September 27, 2011. (Doc. 506); see United States v. Livingston, 445 F. App'x 550 (3d Cir. 2011) (nonprecedential). Livingston filed a petition for writ of certiorari, which the United States Supreme Court denied on April 30, 2012. See Livingston v. United States, 132 S. Ct. 2100 (2012) (mem.).

On May 2, 2013, Livingston timely filed the instant motion (Doc. 515) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel.³ The court denied in part Livingston's motion,

---

² The government dismissed Count XV of the indictment, which alleged possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). (Doc. 466).

³ Where a defendant has taken a direct appeal, the one-year limitations period begins to run "on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires." United States v. Davies, 394 F.3d 182, 186 n.2 (3d Cir. 2005) (quoting Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999)); see also Sup. Ct. R. 13. In the instant case, the Supreme Court denied Livingston's timely filed petition for certiorari on April 30, 2012. (See Doc. 515 at 4-5); see also Livingston, 132 S. Ct. 2100. The pending motion was postmarked on April 28, 2013 and, therefore, was filed within the one-year limitations period. See R. Governing § 2255 Cases R. 3(d) (stating that a paper filed by an inmate is "timely if deposited in the institution's internal mailing system on or before the last day for filing.").

disposing of three ineffective assistance of counsel claims. (Doc. 551). The court deferred ruling on Livingston's fourth ineffective assistance of counsel claim regarding the alleged failure of Livingston's trial counsel to engage in plea negotiations, pending an evidentiary hearing. (Id.) An evidentiary hearing was held on May 28, 2014. (Doc. 568). The remaining ineffective assistance of counsel issue has been fully briefed and is ripe for disposition.[4]

## II.  Legal Standard

A petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 is the appropriate vehicle by which a defendant in federal custody may challenge the legality of a conviction or sentence. See 28 U.S.C. § 2255; In re Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997). When reviewing a motion to pursuant to § 2255, the court must accept the truth of the petitioner's factual allegations unless clearly frivolous based on the existing record. See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Gov't of V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)).

The Sixth Amendment right to counsel is the right to the effective assistance

---

[4] In his original motion to vacate, set aside, or correct his sentence, Livingston also advanced a fifth claim for relief on the grounds that the court imposed a 461-month term of imprisonment by improperly "stack[ing]" the sentences associated with his separate convictions under 18 U.S.C. § 924(c)(1). (Doc. 515 at 12). Livingston abandons this claim in his brief in support of the motion and in his supplemental briefing. (See Docs. 543, 545, 571). To the extent that Livingston has not abandoned this claim, the court finds it meritless. See United States v. Bonner, 469 F. App'x 119, 135-36 (3d Cir. 2012) (nonprecedential) (holding that the "except" clause in § 924(c)(1)(A) does not preclude consecutive mandatory minimum sentences that stem from separate counts of conviction (citing Abbott v. United States, 131 S. Ct. 18, 23 (2010))).

of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). In Strickland, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. Id. at 687-88. A petitioner must demonstrate: (1) that his or her counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. See id.

In evaluating the first prong of the Strickland test, the court must be "highly deferential" toward counsel's conduct. Id. at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. Strickland, 466 U.S. at 691; United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999). As the Third Circuit has observed, "[t]o avoid the shoals of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable." Gov't of V.I. v. Weatherwax, 77 F.3d 1425, 1435 (3d Cir. 1996) (quoting United States. v. McGill, 11 F.3d 223, 227 (1st Cir. 1993)).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. See Thomas v. Varner, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the Strickland test. Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. Strickland, 466 U.S. at 697.

### III.   Discussion

In his remaining ineffective assistance of counsel claim, Livingston alleges that his trial counsel prevented him from engaging in plea negotiations. (Doc. 543 at 18-20). The right to effective assistance of counsel extends to the plea negotiation process. Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012) (stating that the right to counsel extends to all critical stages of criminal proceedings, including arraignments, post-indictment interrogations, and entry of a guilty plea). "[A] defendant is entitled to the effective assistance of counsel in determining how to plead." United States *ex rel.* Caruso v. Zelinsky, 689 F.2d 435, 438 (3d Cir. 1982)

(quoting Colson v. Smith, 438 F.2d 1075, 1078 (5th Cir. 1971)).  In the context of a guilty plea, counsel must "give a defendant information sufficient 'to make a reasonably informed decision whether to accept a plea offer.'"  Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013) (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)).  A court may find counsel to be ineffective when the advice given is "so incorrect and so insufficient that it undermined [the petitioner's] ability to make an intelligent decision." Day, 969 F. 2d at 43.  The decision to accept or reject a plea bargain offer is reserved for the defendant, and "failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards." Zelinsky, 689 F.2d at 438; accord United States v. Martin, 454 F. Supp. 2d 278, 284 (E.D. Pa. 2006).

However, counsel is not ineffective for failing to engage in plea negotiations when the client maintains his innocence and wants to proceed to trial.  United States v. Gonzales-Rivera, 217 F. App'x 166, 169 (3d Cir. 2007) (nonprecedential); United States v. Kama, No. 02-403, 2014 U.S. Dist. LEXIS 110347, at *9 (E.D. Pa. Aug. 8, 2014).  In Gonzales-Rivera, the Third Circuit held that counsel's decision not to pursue a plea agreement did not fall below an objective standard of reasonableness under Strickland because an "initiation of plea discussions not authorized by a client maintaining his innocence would have been fruitless." Gonzales-Rivera, 217 F. App'x at 169.  And as the district court reasoned in United States v. Gordon, "[i]t represents a[] . . . great[] constitutional leap to hold that the Sixth Amendment *requires* that the defense lawyer press such unwelcome advice on

6

what counsel would reasonably expect to be unwilling and deaf client ears." 979 F. Supp. 337, 341 (E.D. Pa. 1997).

To satisfy the prejudice requirement, the petitioner must show (1) that "there is a reasonable probability that the plea offer would have been presented to the court" but for counsel's erroneous advice, meaning that the petitioner "would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances;" (2) "that the court would have accepted its terms;" and (3) "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler v. Cooper, 132 S. Ct. 1376, 1384-85 (2012); accord Shotts, 724 F.3d at 376.

The court in Gonzales-Rivera found that the petitioner failed to satisfy the prejudice prong of Strickland when he argued "summarily that he would have accepted a plea agreement and that there is a reasonable probability that his sentence would have been more favorable had he pursued a plea agreement." Gonzales-Rivera, 217 F. App'x at 170. The court held that any prejudice that the petitioner may have suffered was "far too speculative" and that the petitioner's "contention that he would have accepted a guilty plea [was] belied" by evidence in the record. Id. (noting that the petitioner "maintained his innocence throughout [the trial] proceedings and therefore was not willing . . . to plead guilty to the charges against him"). District courts in this circuit have applied this reasoning and rejected ineffective assistance of counsel claims relating to plea negotiations when a petitioner maintained innocence throughout the proceedings. Kama, 2014

7

U.S. Dist. LEXIS 110347, at *13 ("It is impossible to conclude, in light of Petitioner's testimony proclaiming his innocence and the record of failed plea negotiations, that Petitioner would have accepted an open plea and admitted guilt . . . ."); Donna v. United States, No. 10-1607, 2011 U.S. Dist. LEXIS 9142, at *21-23 (D.N.J. Jan. 31, 2011) (finding that the petitioner did not show prejudice under Strickland because she maintained her innocence throughout the trial); United States v. Jackson, No. 09-5255, 2010 U.S. Dist. LEXIS 40917, at *9-10 (E.D. Pa. Apr. 27, 2010) (rejecting the petitioner's ineffective assistance of counsel claim where the petitioner maintained innocence throughout the proceedings and the record did not demonstrate that he would have accepted a guilty plea).

Livingston claims that his trial counsel prevented him from conducting plea negotiations with the government. In his motion, Livingston does not make clear to which of his four trial attorneys this allegation applies. During different stages of the proceedings, Livingston was represented by Gregory Abeln ("Attorney Abeln"), Jason Duncan ("Attorney Duncan"), Laurence Kress ("Attorney Kress"), and Christopher Ferro ("Attorney Ferro"). (Doc. 568 at 4:2-16).[5] Livingston claims that

---

[5] The majority of the evidence presented at the May 28, 2014 evidentiary hearing relates to Livingston's representation by Attorneys Abeln, Kress, and Ferro. (See Doc. 568). Attorney Ferro, who represented Livingston at his trial, testified at the hearing. (Id. at 31:10-54:13). Livingston mentioned Attorney Duncan only briefly during the hearing, without offering specific facts in support of any allegations against him (id. at 6:4-12, 8:20-21), and Livingston's brief in support of the instant motion references only Attorneys Abeln, Kress, and Ferro (see Doc. 571 at 8-9). The court therefore construes Livingston's ineffective assistance claims as limited to Attorneys Abeln, Kress, and Ferro.

had he entered into a binding plea agreement, he "may never have faced the 30-plus year sentence that he is currently serving." (Doc 543 at 20). More specifically, Livingston alleges that: (1) his trial counsel threatened to withdraw from his case if he pursued plea negotiations with the government; (2) his trial counsel provided erroneous advice about the nature of the charges against him, the punishment if convicted, and the weight of evidence against him; and (3) his trial counsel informed him that the government was not receptive to plea negotiations. (Id. at 18-20). The court will address each claim *seriatim*.

A.  **Petitioner's Claim That Trial Counsel Threatened to Withdraw**

Livingston claims that his trial counsel threatened to withdraw representation "should he persist in his desire to pursue and enter into plea negotiations with the government." (Id. at 18). The record does not establish sufficient facts to support this allegation. Indeed, Livingston's contention is directly refuted by his testimony at the May 28, 2014 evidentiary hearing. Livingston testified that his first trial counsel, Attorney Abeln, sought to pursue a plea agreement rather than proceed to trial, but that Livingston rejected that strategy, maintaining his innocence. (Doc. 568 at 18:2-19:24). Because of this "irreconcilable conflict," Livingston moved for a change of appointed counsel. (Id. at 18:5-8, 19:25-20:3). Attorney Abeln's written response to that motion stated:

> The defendant has refused to consider a[n] offered plea agreement by the government and maintains his innocence. Counsel for the [d]efendant has advised him that he believes that in review of all of the discovery, it would be [a] very likely chance that he would be

9

> convicted . . . . The [d]efendant also does not want to
> entertain a proffer with the government. (Doc. 168 at 1).

At the hearing, Livingston agreed that Attorney Abeln's written response was a fair and accurate representation of their relationship. (Doc. 568 at 19:10-24).

Livingston also testified that he continued to maintain his innocence during his representation by Attorney Kress. (Id. at 20:23-21:4). Furthermore, he testified that he had no concerns with Attorney Kress regarding plea negotiations. (Id. at 22:1-23).[6] Finally, Livingston presented no evidence at the hearing showing that Attorney Ferro threatened to withdraw representation because Livingston wanted to pursue plea negotiations or enter a guilty plea. Instead, Livingston testified that Attorney Ferro suggested that Livingston enter plea negotiations with the government but that Livingston declined to follow this advice. (Id. at 24:1-25). Indeed, Livingston stated at the evidentiary hearing that he was unwilling to testify against a co-defendant and continues to maintain his innocence. (Id. at 24:10-25, 27:9-11). In light of the testimony at the hearing, the court finds no support for Livingston's claim that his trial counsel threatened to withdraw if Livingston pursued plea negotiations. Livingston's own testimony reveals that trial counsel

---

[6] In his supplemental brief in support of the motion, Livingston argues that Attorney Kress failed to inform Livingston that if he proceeded with a suppression motion, the government would withdraw its plea agreement. (Doc. 571 at 5). The court notes, however, that Livingston had already rejected the government's plea agreement during Attorney Abeln's representation (Doc. 568 at 18:18-19:2) and that, while Livingston did not file a suppression motion until November 3, 2009 (Doc. 211), the government's plea agreement expired on April 10, 2009 (Doc. 568 Ex. 2 at 24).

repeatedly encouraged him to enter into a plea agreement throughout their representation.

### B. Petitioner's Claim That Trial Counsel Provided Erroneous Advice

Livingston next claims that he was denied effective assistance of counsel because his trial counsel provided erroneous advice about the nature of the charges against him, the punishment if convicted, and the weight of evidence against him, thus preventing him from making an informed choice to enter into a plea agreement. (Doc. 543 at 18-19). The hearing contained conflicting testimony about the extent to which Livingston's trial counsel explained to him the potential consequences if Livingston was convicted and his likelihood of success at trial. Livingston testified that none of his attorneys advised him that he faced a minimum mandatory sentence of thirty to thirty-two years consecutive to the sentence received for the underlying crime if he was convicted. (Doc. 568 at 10:17-20, 11:6-9, 25:1-26:21, 56:1-8). He also stated that his attorneys did not explain his likelihood of success at trial. (Id. at 10:21-11:1, 25:7-9).

Livingston does not offer specific facts supporting these allegations as against Attorney Abeln. As previously noted, Livingston testified that he requested a change of counsel because he rejected Attorney Abeln's approach in encouraging him to pursue a plea agreement. (Id. at 18:2-19:24). Livingston even agreed that Attorney Abeln's account of the situation was correct: "Counsel for the [d]efendant has advised him that he believes that in review of all the discovery, it would be [a] very likely chance that he would be convicted." (Doc. 168 at 1; Doc 568 at 19:10-24).

11

Livingston also claims that he did not receive any information from Attorney Kress about the potential penalties facing him should he lose at trial or his likelihood of success at trial. (Doc. 568 at 10:17-20). Attorney Ferro testified, however, that one of the documents in the files (that he received from Attorney Kress when he began Livingston's representation) was a letter from Attorney Kress to Livingston. (Id. at 34:5-24). This letter, dated January 15, 2010, outlined the mandatory minimum sentences associated with the charges against Livingston as well as the underlying offenses. (Id. Ex. 3). The letter further informed Livingston that he faced a mandatory minimum sentence of thirty-two years in addition and consecutive to the sentences for the other offenses. (Id.) Attorney Ferro also testified that he discussed the mandatory minimum sentences at every meeting with Livingston and discussed the contents of the letter orally with Livingston, who he averred had a copy of the letter. (Id. at 34:25-35:3, 41:24-42:25, 44:25-45:5). Attorney Ferro further explained that he candidly informed Livingston of his chances at trial and indicated that the government's evidence was "incredibly strong." (Id. at 35:14-36:14). Livingston's testimony regarding the letter is notably inconsistent. He initially denied ever receiving the letter from Attorney Kress but later acknowledged reading about the mandatory minimum penalties and potential exposure in the letter. (Id. at 55:12-25). Livingston also denied having conversations with Attorney Ferro regarding the letter or its contents, stating that although Attorney Ferro mentioned the mandatory minimum sentences, he did not discuss it in detail with Livingston and did not discuss his potential exposure or

chances of success at trial. (Id. at 10:17-11:9, 25:7-26:7, 56:1-8). Both Livingston's and Attorney Ferro's testimony cast doubt on Livingston's threshold assertion that he never received the letter. In any event, the court does not find plausible Livingston's claim that he was unfamiliar with the contents of the letter in light of Attorney Ferro's credible testimony on this issue. Cf. United States v. Odinga, No. 99-506-02, 2007 WL 2461705, at *3-4 (E.D. Pa. Aug. 23, 2007) (concluding that petitioner could not credibly claim that he was unaware of his sentencing exposure when the record revealed repeated efforts to inform petitioner of his exposure).

Counsel is ineffective when the advice given is "so incorrect and so insufficient that it undermined [the petitioner's] ability to make an intelligent decision." Day, 969 F.2d at 43. The court finds credible the testimony of Livingston's trial counsel. Clearly, he did not provide advice "so incorrect and so insufficient" as to undermine Livingston's ability to make an informed decision regarding a plea agreement. Rather, Livingston's trial counsel repeatedly encouraged him to enter into a plea agreement or engage in plea negotiations. Indeed, Livingston testified that Attorney Ferro did, in fact, discuss potential sentences with him, although he disagrees that this conversation addressed the topic in sufficient detail. (Doc. 568 at 25:10-26:21). His refusal to countenance a plea agreement or plea negotiations caused a significant conflict with, at minimum, Attorney Abeln. (Id. at 18:2-19:24). Both Attorney Kress's letter and Attorney Ferro's discussions with Livingston squarely addressed the possibility of a lengthy mandatory minimum sentence. Attorney Ferro's discussions with Livingston also

addressed the likelihood of conviction at trial. The court concludes that trial counsel's assistance in advising Livingston regarding his potential sentence and the chances of success at trial did not fall below an objective standard of reasonableness under Strickland.

### C. Petitioner's Claim That Trial Counsel Informed Him That the Government Was Not Open to Plea Negotiations

Livingston alleges that his trial counsel informed him that the government had rejected the suggestion of a plea negotiation. (Doc. 543 at 18). He further claims that trial counsel informed him that trial was the only available option and that "acquittal at trial was pretty much a sure bet." (Id.) At the evidentiary hearing, Livingston testified that Attorney Abeln told him that the government had offered a plea agreement with a maximum fifteen-year sentence and presented him with the agreement, but did not explain it further. (Doc. 568 at 5:5-6:3, 14:23-15:21). He also testified that Attorney Ferro, who represented him at the actual trial, presented the original plea agreement from the government approximately one month before trial and advised him to take it. (Id. at 7:16-8:10).[7] Livingston stated that he rejected the opportunity because he had not yet received certain discovery,

---

[7] Attorney Ferro testified that he did not remember presenting a plea agreement to Livingston one month before the trial. (Doc. 568 at 37:10-38:22). This uncertainty does not change the court's analysis, however, because Attorney Ferro consistently stated that he orally advised Livingston to plead guilty. (Id. at 36:3-37:15, 38:18-20). Although it is unclear whether Attorney Ferro presented Livingston with a physical copy of a plea agreement, both Livingston's and Attorney Ferro's testimony are consonant in showing that Attorney Ferro communicated the desirability of pursuing a plea agreement prior to trial.

which he obtained two days before the trial. (Id. at 8:3-9:4).[8] Livingston testified that, on the day of the trial, he asked Attorney Ferro whether the plea agreement was still available, and that Attorney Ferro informed him that it was off the table and he had no choice but to proceed to trial. (Id. at 9:18-10:13). Livingston said that he would have accepted the original fifteen-year plea agreement on the day of the trial and that he "was basically forced to go to trial." (Id. at 12:11-23).

Throughout his testimony, Livingston stated that he was unwilling to enter into a plea agreement in light of his innocence and still maintains his innocence. (Id. at 16:8-19, 17:14-17, 24:10-25, 27:9-16). Attorney Ferro testified that they discussed his "desire for [Livingston] to consider pleading guilty" and that he "certainly indicated that [he] felt it was [his] client's best interests to plea." (Id. at 37:14-15, 38:18-19). According to Attorney Ferro, Livingston reacted with frustration and anger to any mention of the possibility of a plea agreement and responded that Attorney Ferro was not "fighting for him" and "didn't believe in his innocence." (Id. at 36:15-23). Attorney Ferro knew that Livingston had reacted negatively with prior counsel regarding whether to consider a plea agreement and, in an effort to avoid those same conflicts, focused on evidentiary matters rather than plea negotiations with Livingston. (Id. at 33:3-25); cf. Gordon, 979 F. Supp. at

---

[8] In light of Attorney Ferro's credible testimony that he previously informed Livingston of his likelihood of success at trial and that Livingston never indicated any interest in a plea agreement, as well as Livingston's continued protestation of innocence, the fact that he received Jencks Act materials two days before trial does not change the court's ineffective assistance of counsel analysis.

340-41 (holding that, when a client steadfastly protested his innocence throughout the trial and sentencing, his attorney did not have an affirmative duty to canvass options he knew were directly contrary to the client's wishes). Attorney Ferro further credibly testified that at no point during his representation of Livingston did Livingston indicate that he wanted to pursue plea negotiations or accept a plea agreement. (Id. at 38:22-39:21, 49:4-21).

According to the Court in Strickland, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691. "Lawyers must take clients as they find them, and the client who persists in his protestation of innocence would scarcely welcome advice from his champion that would assure his incarceration." Gordon, 979 F. Supp. at 341. Trial counsel presented Livingston with a plea agreement on at least one occasion[9] and repeatedly indicated that they believed that a plea agreement was in their client's best interests. Livingston maintains his innocence and testified that he rejected the possibility of a plea agreement several times. Attorney Ferro encouraged him to take a plea deal while respecting his refusal to do so and desire to pursue a jury trial instead. More strenuous encouragement to accept a plea agreement would have fallen on deaf ears, and Attorney Ferro did not have an affirmative duty to press the issue when Livingston had made his wishes on the matter clear. See id. Accordingly, the court finds that

---

[9] Livingston concedes that Attorney Abeln informed him of the government's plea deal. (Doc. 568 at 5:5-6:1).

trial counsel was not ineffective in informing Livingston of the available plea agreement options.

### D. Prejudice Analysis

Assuming, *arguendo*, that trial counsel's assistance was ineffective, Livingston does not satisfy the prejudice prong of Strickland. Livingston testified that he would have accepted the original plea deal that the government offered to him, which capped the sentence at a maximum of fifteen years, if it had been presented to him on the day of the trial. (Doc. 568 at 12:15-23). However, the plea agreement required that Livingston accept responsibility for the offenses as well as cooperate with the government by offering information about the unlawful activities of others. (Id. Ex. 2 at 7, 9-10, 15-16). Livingston continues to maintain his innocence and testified that he was not able to provide the government with any evidence or information about a co-defendant's involvement in the alleged offense. (Id. at 16:8-19, 27:5-16). His testimony at the hearing that he would have entered into a plea agreement is undermined by the fact that he maintained his innocence throughout the trial and continues to do so today. See Gonzales-Rivera, 217 F. App'x at 170; see also Kama, 2014 U.S. Dist. LEXIS 110347, at *13; Jackson, 2010 U.S. Dist. LEXIS 40917, at *9-10. Livingston had already rejected a plea agreement presented by the government during Attorney Abeln's representation and continued to reject counsel's suggestions that he pursue plea negotiations. Livingston has not shown that the government would have been willing to present a new plea agreement that he allegedly requested on the day of the trial, nor that the

17

court would have accepted it. As in Gonzales-Rivera, any prejudice that may have resulted is "far too speculative," and Livingston's "contention that he would have accepted a guilty plea is belied" by evidence in the record. See Gonzales-Rivera, 217 F. App'x at 170. Livingston has not demonstrated a reasonable probability that, had there been an open plea agreement, Livingston would have accepted it given his declaration of innocence.[10]  Accordingly, the court concludes that Livingston was not prejudiced by the actions of trial counsel.[11]

---

[10] For the same reason, and contrary to his assertion (Doc. 571 at 7), Livingston has not demonstrated a reasonable probability that he would have pleaded guilty in the absence of a plea agreement if trial counsel had advised him of this option.

[11] In his supplemental brief, Livingston presents a new argument: his trial counsel never advised him that he could enter a *nolo contendere* plea even in the absence of a plea agreement. (Doc. 571 at 7-9). As the government explains in its brief, however, such a plea would not have avoided the same consecutive mandatory minimum sentences to which Livingston was exposed by proceeding to trial. (Doc. 572 at 7). Attorney Ferro testified that he did not discuss this option with Livingston but noted that a *nolo contendere* plea would have required Livingston to plead to all of the charges against him, including a count that the government ultimately dismissed. (See Doc. 568 at 53:15-54:5; see also Doc. 466). Livingston did not suffer prejudice, therefore, because a *nolo contendere* plea without an agreement would not have resulted in a more favorable sentencing outcome for Livingston.

**IV. <u>Conclusion</u>**

For the above-stated reasons, the court will deny Livingston's motion (Doc. 515) to vacate, set aside, or correct his sentence.  An appropriate order follows.


          /S/ <span style="font-variant:small-caps">Christopher C. Conner</span>
          Christopher C. Conner, Chief Judge
          United States District Court
          Middle District of Pennsylvania


Dated:       November 7, 2014