**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:09-CR-72** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **DESHAWN LIVINGSTON,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

A jury convicted defendant DeShawn Livingston of multiple offenses, including two counts of possessing, using, and carrying a firearm in furtherance of Hobbs Act robbery in violation of 18 U.S.C. § 924(c)(1)(A).  Livingston moves pursuant to 28 U.S.C. § 2255 to vacate his Section 924(c) convictions based on the United States Supreme Court's decision in <u>United States v. Davis</u>, 588 U.S. ___, 139 S. Ct. 2319 (2019).

**I.    <u>Factual Background & Procedural History</u>**

In February 2009, a federal grand jury returned a 15-count indictment charging Livingston and four codefendants (Donald A. Scott, Chance D. Bonner, Lori Ann Miller, and Miqual Hodge) with conspiracy against the United States and various Hobbs Act robbery, carjacking, and firearms offenses.  The charges arose from a string of armed robberies and carjackings in southcentral Pennsylvania.  The indictment charged Livingston in Counts 1 through 5 and Count 15.

Count 1 charged that Livingston conspired with others to commit multiple offenses against the United States—"namely interference with interstate and foreign commerce by threats and violence, carjacking, possession of firearms by

a convicted felon, transfer of firearms knowing that such firearms will be used in a crime of violence, and possessing, using, and carrying firearms during and in relation to a crime of violence"—in violation of 18 U.S.C. § 371.  (See Doc. 1 at 1-3). Counts 2 and 4 charged that Livingston and others committed, attempted to commit, conspired to commit, or aided and abetted the commission of Hobbs Act robbery in violation of 18 U.S.C. §§ 2 and 1951.  Specifically, those counts charged that defendants, by robbery, did

> obstruct, delay, and affect interstate and foreign
> commerce and the movement of any article or commodity
> in commerce . . . and attempted and conspired so to do,
> and did commit and threaten physical violence to any
> person or property in furtherance of a plan or purpose
> to do so, and did aid and abet.

(See Doc. 1 at 3-4, 4-5).  Counts 3 and 5 charged Livingston and others with possessing, using, and carrying a firearm, and aiding and abetting same, "during, in relation to, and in furtherance of a crime of violence for which he could be prosecuted in a court of the United States, namely interference with commerce by threats or violence," in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(i).  (See Doc. 1 at 4, 5).[1]

---

[1] Count 15 charged Livingston and others with unlawful possession of a firearm by a convicted felon and aiding and abetting same in violation of 18 U.S.C. §§ 2 and 922(g)(1).  (Doc. 1 at 10).  The government moved to dismiss Count 15 on the final day of trial and that count was not put to the jury.  (See generally Doc. 403).

Livingston and Scott proceeded to trial in August 2010.[2]  After five days of evidence, the jury found Livingston guilty on all counts against him.  As to each of the Hobbs Act robbery convictions (Counts 2 and 4), the jury found that Livingston "did commit, or attempted to commit, or aided and abetted the commission of, a Hobbs Act robbery."  (Doc. 403 at 2, 3).  For the Section 924(c) convictions (Counts 3 and 5), the jury found that Livingston "did possess, use, and carry a firearm in furtherance of the commission of a Hobbs Act robbery, or aided and abetted another in doing so."  (Id. at 2, 3).

The court sentenced Livingston to an aggregate term of 461 months' imprisonment, driven in large part by an 84-month statutory mandatory minimum term on Count 3 and a 300-month statutory mandatory minimum term on Count 5, both of which were required by statute to be served consecutively to each other and to all other counts.  (See Doc. 466 at 3); see also 18 U.S.C. § 924(c)(1)(A), (C) (2011). Livingston appealed his convictions to the Third Circuit Court of Appeals, which affirmed on September 27, 2011.  See United States v. Livingston, 445 F. App'x 550 (3d Cir. 2011) (nonprecedential).  Livingston then timely filed his first motion under 28 U.S.C. § 2255, claiming ineffective assistance of trial and appellate counsel.  We denied Livingston's motion, see United States v. Livingston, No. 1:09-CR-72, 2014 WL 840002 (M.D. Pa. Mar. 4, 2014) (Conner, C.J.); United States v. Livingston, No. 1:09-CR-72, 2014 WL 5801612 (M.D. Pa. Nov. 7, 2014) (Conner, C.J.), and the court of

---

[2] The court severed the charges against Bonner for separate trial on motion of the government.  (See Doc. 242).  Miller and Hodge entered guilty pleas and did not proceed to trial.  (See Docs. 308, 314).

appeals denied a certificate of appealability, see United States v. Livingston, No. 14-4784 (3d Cir. July 20, 2015).

Livingston filed a second Section 2255 motion through appointed counsel in June 2016, invoking the Supreme Court's decision in Johnson v. United States, 576 U.S. 591 (2015). Livingston's appointed counsel applied to the Third Circuit for authorization to proceed with a second or successive motion in this court and, at counsel's request, we stayed Livingston's motion while the court of appeals considered his application. Proceedings here and in the court of appeals remained stayed while the Johnson progeny unfolded at the Supreme Court. See Welch v. United States, 578 U.S. ___, 136 S. Ct. 1257 (2016); Sessions v. Dimaya, 584 U.S. ___, 138 S. Ct. 1204 (2018); United States v. Davis, 588 U.S. ___, 139 S. Ct. 2319 (2019).

On August 15, 2019, following the Supreme Court's Davis decision, the court of appeals granted Livingston's application (along with the applications of approximately 200 other defendants) for leave to proceed with his second or successive Section 2255 motion in this court. In re Livingston, No. 16-2078 (3d Cir. Aug. 15, 2019) (citing In re Matthews, 934 F.3d 296 (3d Cir. 2019)). We promptly entered this judicial district's standing order appointing counsel to file any supplemental Section 2255 motion that may be warranted based on Davis. Appointed counsel filed a supplemental motion on March 13, 2020, and that motion is fully briefed and ripe for disposition. (See Docs. 643, 651, 655, 661).

## II.    Legal Standard

Under Section 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence.  28 U.S.C. § 2255.  Courts may afford relief under Section 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States."  Id. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a).  The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record."  United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005).

## III.    Discussion

Livingston seeks to vacate his multiple Section 924(c) convictions and the consecutive, mandatory minimum sentences required by statute based on the Supreme Court's decision in United States v. Davis, 588 U.S. ___, 139 S. Ct. 2319 (2019).  We address two threshold issues before turning to the merits of his motion.

### A.    Second or Successive Jurisdiction

The instant motion is Livingston's second pursuant to 28 U.S.C. § 2255.  See United States v. Livingston, No. 1:09-CR-72, 2014 WL 840002 (M.D. Pa. Mar. 4, 2014) (Conner, C.J.); United States v. Livingston, No. 1:09-CR-72, 2014 WL 5801612 (M.D. Pa. Nov. 7, 2014) (Conner, C.J.).  Livingston must thus secure prior authorization from the Third Circuit Court of Appeals to proceed with his motion, and thereafter

demonstrate to this court that his motion is grounded in "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2); see also 28 U.S.C. § 2244(b)(3)(C).

The court of appeals conducted its preliminary examination in this case and concluded that Livingston had made the requisite *prima facie* showing that his motion satisfies these criteria.  See *In re* Livingston, No. 16-2078 (3d Cir. Aug. 15, 2019) (citing *In re* Matthews, 934 F.3d 296 (3d Cir. 2019)).  This authorization, however, evinces only that Livingston has made a sufficient showing of possible jurisdiction to warrant "fuller exploration by the district court."  See Goldblum v. Klem, 510 F.3d 204, 219 (3d Cir. 2007) (quoting Bennett v. United States, 119 F.3d 468, 469-70 (7th Cir. 1997)).  As our court of appeals has explained: "The District Court is not bound by our preliminary examination of the gatekeeping requirements, nor should it rest on our determination; it must conduct an independent inquiry."  See United States v. Peppers, 899 F.3d 211, 221 (3d Cir. 2018) (citing Goldblum, 510 F.3d at 219-20).  The court of appeals has described our gatekeeping function as requiring a "more extensive, more thorough, and . . . fuller" jurisdictional review before we may proceed to the merits of a second or successive

Section 2255 motion.[3]  See id. (internal quotation marks omitted) (quoting

Goldblum, 510 F.3d at 220).

There is no indication in the Davis decision itself that the Supreme

Court intended it to be retroactive.  See Davis, 139 S. Ct. at 2354 (Kavanaugh, J.,

dissenting) ("And who knows whether the ruling will be retroactive?").  Several

courts of appeals addressing this question have looked to Tyler v. Cain, 533 U.S. 656

(2001), where the Supreme Court noted that "[m]ultiple cases can render a new rule

retroactive only if the holdings in those cases necessarily dictate retroactivity of the

new rule."  Tyler, 533 U.S. at 666.  Applying this principle, three courts of appeals

have concluded that Davis's retroactivity is "necessarily dictate[d]" by the Supreme

Court's decision in Welch, which held that Johnson—the precursor to Davis—is

retroactively applicable on collateral review.  See In re Franklin, 950 F.3d 909, 910-

11 (6th Cir. 2020) (quoting Tyler, 533 U.S. at 666); In re Mullins, 942 F.3d 975, 977-79

(10th Cir. 2019) (same); In re Hammoud, 931 F.3d 1032, 1038-39 (11th Cir. 2019)

---

[3] Livingston's briefing in this court was spare on the question of second-or-successive jurisdiction, so, in June 2020, we issued an order tasking Livingston to show cause why his motion should not be dismissed for lack of jurisdiction.  (Doc. 656 at 3).  Livingston's show-cause response not only fails to engage with the circuit-specific case law identified by the court, it also intimates that our decision to raise that inquiry and test our jurisdiction in the first instance suggests some flaw in the system.  (See Doc. 661 at 3 n.3 (asserting that "it makes sense to have a threshold legal issue, like retroactivity, resolved by the circuit" and that "[t]his case presents a valid reason for revisiting the requirement of overlapping determinations of the threshold retroactivity issue")).  A district court is required by the court of appeals to independently assure itself of jurisdiction over second-or-successive motions like Livingston's, and our show-cause order properly put counsel to the task of establishing the jurisdiction implicitly invoked but never substantiated.  See Peppers, 899 F.3d at 221 (citing Goldblum, 510 F.3d at 219-20).  Any objection counsel may have to the court of appeals' chosen approach to evaluating jurisdiction is more appropriately lodged with that court.

(same); see also King v. United States, 965 F.3d 60, 64 (1st Cir. 2020) (accepting government concession that Davis applies retroactively on collateral review and proceeding to merits of second-or-successive motion).

More recently, the Fifth Circuit offered a thorough and persuasive counterpoint to this emerging consensus in In re Hall, 979 F.3d 339 (5th Cir. 2020). The Hall court observed that, while "a reasonable jurist could easily read Welch and conclude that Davis's retroactivity *logically follows*, . . . that is different from saying that Welch *necessarily dictates* that outcome." In re Hall, 979 F.3d at 347. In other words, the court said, "[a] reasonable jurist might well predict that the Supreme Court *would* make Davis retroactive if asked[,] [b]ut a successive habeas petition may proceed only if Davis *has been* 'made retroactive . . . by the Supreme Court.'" Id. (fourth alteration in original) (emphasis added). According to the Fifth Circuit, it is not enough that "everyone merely agrees the Supreme Court *will* make it retroactive." Id. Ultimately, the court did not decide the question; it found that, even if Davis had been made fully retroactive by the Supreme Court, the movant's Davis claim was meritless.

Our court of appeals did not discuss retroactivity in its decision authorizing second-or-successive Davis petitions. See generally In re Matthews, 934 F.3d 296. But it has narrowly interpreted the exception contemplated by Tyler, concluding that a "new rule is only made retroactive by the Supreme Court if that Court has 'explicitly held, or two or more of its decisions when read together . . . *absolutely dictate*, that a particular rule is retroactively applicable to cases on collateral review.'" See Peppers, 899 F.3d at 229 (alteration in original) (emphasis added)

(quoting *In re* Olopade, 403 F.3d 159, 162 (3d Cir. 2005)).  For example, in *In re* Turner, 267 F.3d 225 (3d Cir. 2001), the court declined to apply Tyler to conclude that Apprendi v. New Jersey, 530 U.S. 466 (2000), was fully retroactive on collateral review.  The court accepted *arguendo* movant's assertions that Apprendi was "a straightforward extension and application of" the Supreme Court's retroactive decision in *In re* Winship, 397 U.S. 358 (1970), and that the Court had made other extensions of Winship fully retroactive.  See *In re* Turner, 267 F.3d at 230-31.  Even with those assumptions, the court concluded that "the most that Turner can claim is that the Supreme Court *should* make Apprendi retroactive to cases on collateral review, and not that existing Supreme Court holdings dictate that result."  See id.

In light of this precedent, we are not convinced that the Third Circuit Court of Appeals would join the other circuits to hold that Welch "absolutely dictate[s]" that Davis is retroactive on collateral review.  Cf. Peppers, 899 F.3d at 229 (citing *In re* Olopade, 403 F.3d at 162).  Nonetheless, we may, like the Fifth Circuit, leave the issue for another day: even if we assume that Davis applies retroactively to Livingston's motion, we conclude that Livingston is not entitled to Section 2255 relief under Davis.

### B.  Procedural Default

When a defendant fails to raise a claim on direct appeal, he "procedurally defaults" that claim for purposes of collateral review.  See United States v. Bousley, 523 U.S. 614, 622 (1998).  A defendant may surmount this bar by showing cause to excuse the default, as well as resulting prejudice should the default be given preclusive effect.  See id. (collecting cases); United States v. Doe, 810 F.3d 132, 153

(3d Cir. 2015).  The government asserts that Livingston can demonstrate neither cause nor prejudice.  (See Doc. 651 at 9-12).

Cause has been found to exist when a claim "is so novel that its legal basis is not reasonably available to counsel" in earlier proceedings.  See Bousley, 523 U.S. at 622 (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)); see also Doe, 810 F.3d at 153 (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)).  The Supreme Court has identified three nonexhaustive circumstances in which this novelty exception may apply to excuse counsel's failure to raise a legal theory at trial or on appeal: (1) the Court overrules one of its precedents; (2) the Court overturns a "longstanding and widespread [and] near-unanimous body of lower court authority"; or (3) the Court rebukes a practice that its prior opinions "arguably" sanctioned.  Reed, 468 U.S. at 17 (citations omitted).

We previously determined that Section 2255 motions premised on the Supreme Court's decision in Johnson implicated the novelty exception.  See, e.g., United States v. Nelson, No. 1:09-CR-211, 2017 WL 4648145, at *5-6 (M.D. Pa. Oct. 17, 2017) (Conner, C.J.); United States v. Mitchell, 218 F. Supp. 3d 360, 366-68 (M.D. Pa. 2016) (Conner, C.J.).  We noted that, before Johnson, the Supreme Court had repeatedly rejected entreaties from the late Justice Scalia to admit the residual clause of the Armed Career Criminal Act "is a drafting failure and declare it void for vagueness."  See Sykes v. United States, 564 U.S. 1, 28 (2011) (Scalia, J., dissenting); see also Mitchell, 218 F. Supp. 3d at 367 & n.2 (citing James v. United States, 550 U.S. 192 (2007); Begay v. United States, 553 U.S. 137 (2008); Chambers v. United States, 555 U.S. 122 (2009)).  We held that these cases erected "a jurisprudential

barricade to any successful challenge to the residual clause" and excused prior counsel's failure to raise such a challenge earlier.  <u>See</u> <u>Nelson</u>, 2017 WL 4648145, at *5 (citing <u>Mitchell</u>, 218 F. Supp. 3d at 366-68).

Livingston has not endeavored to make a similar showing as to <u>Davis</u>.  That is, his briefing does not identify a similar series of cases that would have rendered a vagueness challenge to Section 924(c)'s residual clause "unavailable" to him until now.  (<u>See</u> Doc. 655 at 1-3); <u>see also</u> <u>Bousley</u>, 523 U.S. at 622 (quoting <u>Reed</u>, 468 U.S. at 16).  Nonetheless, it is at least plausible that the same rationale that supported the novelty exception for <u>Johnson</u> motions would support its application to <u>Davis</u> motions.  Moreover, if Livingston were to prevail on the merits of his <u>Davis</u> claim, the illegality of his stacked 7-year and 25-year mandatory minimum sentences would constitute prejudice.  We will thus assume *arguendo* that Livingston has cleared the procedural default hurdle and analyze his claim on the merits.

### C.    Merits

Livingston challenges his two Section 924(c) convictions and the resulting consecutive, mandatory minimum sentences.  Section 924(c) establishes enhanced punishments for any person who uses or carries a firearm "during and in relation to," or who possesses a firearm "in furtherance of," a "crime of violence."  18 U.S.C. § 924(c)(1)(A).  The length of the mandatory minimum term of imprisonment—which must be served consecutively to the sentence for the underlying crime of violence—depends on whether the defendant uses, carries, or possesses the firearm (five years); brandishes the firearm (seven years); or discharges the firearm (ten years).  <u>See</u> <u>id.</u> § 924(c)(1)(A)(i)-(iii).  At the time Livingston was sentenced, the

statute required that a "second or subsequent" Section 924(c) conviction receive a 25-year mandatory minimum sentence, even if the defendant's first conviction occurred contemporaneously. In other words, a first Section 924(c) conviction received the mandatory minimum term described above, and any other Section 924(c) conviction received a consecutive mandatory minimum term of 25 years. See 18 U.S.C. § 924(c)(1)(C)(i) (2011).[4]

A felony offense is a "crime of violence" if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," id. § 924(c)(3)(A), or "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," id. § 924(c)(3)(B). Courts refer to Section 924(c)(3)(A) as the "elements clause" or "force clause" and to Section 924(c)(3)(B) as the "residual clause." United States v. Robinson, 844 F.3d 137, 140-41 (3d Cir. 2016), cert. denied, 138 S. Ct. 215 (2017), abrogated on other grounds by Davis, 139 S. Ct. at 2327-33. In Davis, the Supreme Court invalidated the residual clause, holding that it was unconstitutionally vague. See Davis, 139 S. Ct. at 2336.

Livingston argues that, with the residual clause invalidated, his Section 924(c) convictions cannot stand, because none of his convictions qualifies as a crime of violence under the surviving elements clause. The jury convicted Livingston on

---

[4] The practice of contemporaneous stacking for first-time offenders was eliminated by the First Step Act of 2018, which amended Section 924(c) to apply the 25-year consecutive mandatory minimum term only to violations "that occur[] after a prior conviction under this subsection has become final." See First Step Act of 2018, § 403(a), Pub. L. No. 115-391, 132 Stat. 5194, 5221-22.

two Section 924(c) charges, in Counts 3 and 5.  (See Doc. 403 at 2, 3).  The

indictment identified Hobbs Act robbery as the crime of violence underlying the

Section 924(c) counts.  (See Doc. 1 at 4, 5).  The underlying Hobbs Act robbery

counts in turn charged multiple theories, alleging that Livingston committed Hobbs

Act robbery and also "attempted and conspired so to do . . . and did aid and abet."

(Id. at 3-4, 4-5).

According to Livingston, since multiple theories of liability were charged

and submitted to the jury on the substantive Hobbs Act robbery counts, there is no

way to know the precise "crimes of violence" upon which the jury based its Section

924(c) verdicts, and we must therefore assume those convictions are premised on

the least culpable offenses.  (See Doc. 643 at 12-15 (citing Peppers, 899 F.3d at 233)).

Livingston posits that the least culpable offenses are either aiding and abetting, (see

id. at 14), or conspiracy to commit Hobbs Act robbery, (see Doc. 655 at 4), and that

neither qualifies as a Section 924(c) crime of violence.

We disagree with Livingston's assertion that we cannot identify the crimes of

violence underlying the jury's Section 924(c) verdicts.  As an initial matter, while the

indictment did charge the substantive offense of conspiring to commit Hobbs Act

robbery in Counts 2 and 4, that theory was never submitted to the jury.  We did not

instruct the jury on conspiracy to commit Hobbs Act robbery, (see Doc. 649 at 37:6-

58:20),[5] nor was conspiracy to commit Hobbs Act robbery put to the jury on the

---

[5] The court provided conspiracy instructions on Count 1, which charged
a general conspiracy against the United States in violation of 18 U.S.C. § 371, but
those instructions were explicitly limited to Count 1 and the overt acts alleged
therein.  (See Doc. 649 at 37:6-46:16).

verdict form, (see Doc. 403 at 2, 3). We fail to see how the jury could have premised its Section 924(c) verdicts on predicate offenses that were not before it.

Livingston's argument that the Section 924(c) verdicts may have been premised on attempt offenses fares no better. To be sure, the indictment charges multiple theories of liability for the Hobbs Act robbery counts, and the jury was instructed on the various theories (attempt, and aiding and abetting) for those substantive counts. (See Doc. 649 at 52:2-53:6, 57:4-58:20). Our instructions on the Section 924(c) counts were much narrower. Specifically, we instructed the jury:

> In order to find each defendant guilty of each charged offense, you must find that the government proved each of the following two elements beyond a reasonable doubt. First, the government must prove that the defendant *committed the crime of violence*, that is either interference with interstate commerce by threats or violence as charged in Counts 2, 4, 6, 8, and 12 of the indictment respectively, or with respect to Mr. Scott, a federal carjacking offense as charged in Counts 9 and 13 respectively. And second, the government must prove that the defendant knowingly possessed a firearm in furtherance of this crime.

(<u>Id.</u> at 55:16-56:2 (emphasis added)).[6]  These instructions contemplated only a completed Hobbs Act robbery as the predicate crime of violence.  (<u>See</u> <u>id.</u>)  They do not suggest to the jury that attempt to commit Hobbs Act robbery (or conspiracy to do so, for that matter) could support a Section 924(c) conviction.

The verdict form is similarly unambiguous on the criminal acts underlying the Section 924(c) counts.  On the Hobbs Act robbery counts, the verdict form asked whether the jury found beyond a reasonable doubt that Livingston either "did commit, or attempted to commit, or aided and abetted" Hobbs Act robbery. (Doc. 403 at 2, 3).  As to the Section 924(c) counts, however, the inquiry was again much narrower, asking the jury whether it found beyond a reasonable doubt that Livingston "did possess, use, and carry a firearm in furtherance of *the commission of* a Hobbs Act robbery."  (<u>See</u> <u>id.</u> at 2, 3 (emphasis added)).

It is clear from the court's instructions and from the verdict form that the crime of violence underlying Livingston's Section 924(c) convictions is the completed offense of Hobbs Act robbery—based either on principal or accomplice liability—and not the separate, inchoate offenses of conspiracy or attempt.  To hold

---

[6] Livingston contends that the "as charged in" language incorporates into the Section 924(c) instructions all theories charged in the indictment, regardless of whether they were actually submitted to the jury.  (<u>See</u> Doc. 643 at 3, 13).  That clause, however, must be read in light of the unambiguous statement preceding it: that the government must prove that "the defendant *committed* the crime of violence."  (Doc. 649 at 55:19-24 (emphasis added)).  The "as charged in" clause simply linked the separate Section 924(c) counts to the corresponding crime-of-violence counts; it did not broaden the scope of the Section 924(c) instructions to the jury.  Read properly, and without counsel's selective omissions, (<u>see</u> Doc. 655 at 4), no reasonable juror could have fairly understood the court's instructions to permit conviction on a Section 924(c) offense based on attempt or conspiracy to commit a crime of violence.

otherwise would require us to assume that the jurors failed to follow our explicit instructions.  Cf. Gov't of Virgin Islands v. Mills, 821 F.3d 448, 463 (3d Cir. 2016) ("[I]t is well established that jurors are presumed to follow their instructions." (citing Richardson v. Marsh, 481 U.S. 200, 206 (1987))).  We thus limit our discussion to the completed offense of Hobbs Act robbery.[7]

### 1.  *Hobbs Act Robbery*

The Hobbs Act defines "robbery" as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property."  18 U.S.C. § 1951(b)(1).  Livingston argues that, since "property" can include intangible property, "Hobbs Act robbery can be committed by threats to devalue some intangible economic interest like a stock holding or contract right."  (Doc. 643 at 24-25).  Accordingly, he reasons, it does not necessarily encompass the violent force required by Section 924(c)'s elements clause.  (Id.)

We considered (and rejected) this exact argument three weeks ago in United States v. Coles, No. 1:16-CR-212, 2021 WL 308831 (M.D. Pa. Jan. 29, 2021) (Conner, J.).  In Coles, we adopted the *ratio decidendi* of our court of appeals' recent nonprecedential decision in United States v. Monroe, No. 16-4384, ___ F. App'x ___, 2021 WL 50161 (3d Cir. Jan. 6, 2021) (nonprecedential).  The Monroe court rebuffed

---

[7] We note that whether attempted Hobbs Act robbery qualifies as a crime of violence for purposes of Section 924(c)'s elements clause is currently pending before the Third Circuit Court of Appeals.  See United States v. Walker, No. 15-4062 (3d Cir.).

defendants' inventive hypotheticals—like those Livingston offers here—as nothing "more than the application of legal imagination," and noted they had not identified a single case where Hobbs Act robbery has been prosecuted as hypothesized. <u>See Monroe</u>, 2021 WL 50161, at *2 (quoting <u>Gonzales v. Duenas-Alvarez</u>, 549 U.S. 183, 193 (2007)). The court held that "applying the appropriate 'fear of injury' definition . . . to the correct definition of physical force, Hobbs Act robbery is clearly a crime of violence." <u>Id.</u> The <u>Monroe</u> decision accords with every court of appeals to address this question to date.[8]

We reiterate our agreement with the rationale of <u>Monroe</u> and the unanimous consensus of appellate courts. Hobbs Act robbery is categorically a crime of violence under Section 924(c)'s elements clause. Accordingly, we will deny Livingston's motion to the extent it is premised on Hobbs Act robbery as a potential Section 924(c) predicate.

---

[8] <u>See</u> <u>United States v. García-Ortiz</u>, 904 F.3d 102, 105-09 (1st Cir. 2018), <u><i>cert.</i> denied</u>, 139 S. Ct. 1208 (2019); <u>United States v. Hill</u>, 890 F.3d 51, 55-60 (2d Cir. 2018), <u><i>cert.</i> denied</u>, 139 S. Ct. 844 (2019); <u>United States v. Mathis</u>, 932 F.3d 242, 265-66 (4th Cir. 2019), <u><i>cert.</i> denied</u>, <u>Stokes v. United States</u>, 140 S. Ct. 640 (2019), <u>and</u> <u>Uhuru v. United States</u>, 140 S. Ct. 639 (2019); <u>United States v. Buck</u>, 847 F.3d 267, 274-75 (5th Cir. 2017); <u>United States v. Gooch</u>, 850 F.3d 285, 292 (6th Cir. 2017); <u>United States v. Rivera</u>, 847 F.3d 847, 848-49 (7th Cir. 2017); <u>United States v. House</u>, 825 F.3d 381, 387 (8th Cir. 2016); <u>United States v. Dominguez</u>, 954 F.3d 1251, 1260-61 (9th Cir. 2020), <u>petition for <i>cert.</i> filed</u>, No. 20-1000 (2021); <u>United States v. Melgar-Cabrera</u>, 892 F.3d 1053, 1060-66 (10th Cir. 2018); <u><i>In re</i> Saint Fleur</u>, 824 F.3d 1337, 1340-41 (11th Cir. 2016); <u>see also</u> <u>Robinson</u>, 844 F.3d at 150-51 (Fuentes, J., concurring). Interestingly, the First Circuit shot down the exact hypothetical offered by Livingston—that someone could commit Hobbs Act robbery "by threatening to 'devalue some intangible economic interest like a stock holding or contract right'"—stating it "sounds to us like Hobbs Act <i>extortion</i>." <u>Compare</u> <u>García-Ortiz</u>, 904 F.3d at 107, <u>with</u> (Doc. 643 at 24-25); <u>see also</u> <u>Hill</u>, 890 F.3d at 57 n.9 (citing <u>Duenas-Alvarez</u>, 549 U.S. at 193); <u>Dominguez</u>, 954 F.3d at 1260-61 (same).

### 2.    *Aiding and Abetting*

Livingston also argues that aiding and abetting a crime of violence is not itself a crime of violence, so his Section 924(c) convictions must be vacated to the extent they are premised on accomplice liability.  (Doc. 643 at 15-17).  We have considered and rejected this argument in several recent opinions, and we do so again here.  See Coles, 2021 WL 308831, at *10; United States v. Green, 467 F. Supp. 3d 252, 256-57 & nn.2-3 (M.D. Pa. 2020) (Conner, J.), appeal filed, No. 20-2459 (3d Cir.); United States v. Green, No. 1:11-CR-361, ___ F. Supp. 3d ___, 2020 WL 5939161, at *4 & nn.3-4 (M.D. Pa. Oct. 7, 2020) (Conner, J.), appeal filed, No. 20-3262 (3d Cir.).  As we explained in Coles and Green, our court of appeals has held in a nonprecedential decision that it "does not matter" whether a defendant is convicted as a principal or an aider and abettor since aiding and abetting "is not a separate crime."  United States v. McKelvey, 773 F. App'x 74, 75 (3d Cir. 2019) (nonprecedential).[9]  Other courts of appeals to address the question unanimously

---

[9] In McKelvey, the court concluded that aiding and abetting Hobbs Act robbery qualifies as a crime of violence under Section 924(c)'s elements clause, relying on the court's decision in Robinson.  See McKelvey, 773 F. App'x at 75 (applying Robinson, 844 F.3d 137).  The Supreme Court's Davis decision abrogated Robinson (and thus McKelvey, to the extent it applied Robinson's case-specific, noncategorical approach), but it did not disturb McKelvey's separate reasoning on the nature of aiding-and-abetting liability.  See Coles, 2021 WL 308831, at *10 n.8 (citing Green, 467 F. Supp. 3d at 256 n.2; Green, 2020 WL 5939161, at *4 n.3).  As previously, we find McKelvey's reasoning to be persuasive.  See id.

agree that a defendant who aids and abets a crime of violence has himself committed a crime of violence for purposes of Section 924(c).[10]

Accordingly, whether Livingston was convicted as a principal or as an aider and abettor is of no moment: either way, he is treated as having committed the substantive crime of Hobbs Act robbery.  See McKelvey, 773 F. App'x at 75; see also Rosemond v. United States, 572 U.S. 65, 70 (2014) (aiding-and-abetting statute "reflects a centuries-old view of culpability: that a person may be responsible for a crime he has not personally carried out if he helps another to complete its commission" (citation omitted)).  Assuming *arguendo* that the jury convicted Livingston of Hobbs Act robbery on an aiding-and-abetting theory, those

---

[10] See García-Ortiz, 904 F.3d at 109; United States v. Brayboy, 789 F. App'x 384, 385 (4th Cir. 2020) (nonprecedential); United States v. Richardson, 948 F.3d 733, 741-42 (6th Cir. 2020); United States v. Grissom, 760 F. App'x 448, 454 (7th Cir. 2019) (nonprecedential); Johnson v. United States, 774 F. App'x 334, 334-35 (8th Cir. 2019) (nonprecedential); United States v. Deiter, 890 F.3d 1203, 1214-16 (10th Cir. 2018); *In re* Colon, 826 F.3d 1301, 1305 (11th Cir. 2016).

convictions independently qualify as crimes of violence for purposes of Section 924(c).[11]

### 3.   *Conspiracy Against the United States*

Livingston lastly contends that, because the jury's general verdict does not allow the court to determine on which overt act the jury premised its Section 371 conspiracy conviction, this conviction must be vacated.  (See Doc. 643 at 26). Livingston's argument is contingent upon the court finding that his Section 924(c) convictions are invalid post-Davis.  (See id.)  Having rejected Livingston's arguments with respect to the Section 924(c) counts and having held that those convictions remain valid, we likewise reject his derivative argument regarding the conspiracy conviction.

---

[11] The only authority identified by Livingston (other than the dissent in *In re* Colon, 826 F.3d at 1306 (Martin, J., dissenting)) is the Ninth Circuit's decision in United States v. Innie, 7 F.3d 840 (9th Cir. 1993).  That decision is inapposite.  The court in Innie held that a conviction under the accessory-after-the-fact statute, 18 U.S.C. § 3, does not qualify as a crime of violence under the elements clause of 18 U.S.C. § 16, which supplies the definition of "crime of violence" for many federal statutes.  See Innie, 7 F.3d at 850.  But an accessory after the fact is materially different from an aider and abettor.  An aider and abettor facilitates the principal's commission of the underlying offense and is "punishable as a principal."  See 18 U.S.C. § 2(a); see also United States v. Nolan, 718 F.2d 589, 592 (3d Cir. 1983) (quoting Nye & Nissen v. United States, 336 U.S. 613, 619 (1949)).  An accessory after the fact becomes involved *after* the offense has been committed and is generally subject to "one-half" the maximum punishment applicable to the principal.  See 18 U.S.C. § 3.

IV.    **Conclusion**

For all of the reasons set forth herein, we will deny Livingston's motion to vacate and correct sentence pursuant to 28 U.S.C. § 2255.  We will also deny a certificate of appealability, because Livingston has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    February 22, 2021