**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:09-CR-72** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **DESHAWN LIVINGSTON,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Defendant DeShawn Livingston, through appointed counsel, moves for

compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

Livingston asks the court to reduce his sentence to a term of time served in light of

his terminal lung cancer diagnosis.  For the reasons that follow, the court will grant

Livingston's motion.

**I.      <u>Factual Background & Procedural History</u>**

In February 2009, a federal grand jury returned an indictment against

Livingston and four codefendants.  The charges arose from a string of armed

robberies and carjackings in southcentral Pennsylvania.  The indictment charged

Livingston in six of its 15 counts.  Count 1 charged Livingston with conspiracy

to commit various offenses against the United States of America, in violation of

18 U.S.C. § 371.  Counts 2 and 4 charged that Livingston committed, attempted to

commit, conspired to commit, or aided and abetted the commission of Hobbs Act

robbery, in violation of 18 U.S.C. §§ 1951 and 2.  Counts 3 and 5 charged Livingston

with possessing, using, and carrying a firearm, and aiding and abetting same,

during, in relation to, and in furtherance of Hobbs Act robbery, in violation of

18 U.S.C. §§ 924(c)(1)(A)(i) and 2.  Count 15 charged Livingston with unlawful possession of a firearm by a convicted felon, and aiding and abetting same, in violation of 18 U.S.C. §§ 922(g)(1) and 2.

Livingston proceeded to trial in August 2010.  The government moved to dismiss Count 15 on the final day of trial and that count was not put to the jury. After a five-day trial, the jury found Livingston guilty on all remaining counts. On January 13, 2011, this court sentenced Livingston to an aggregate term of 461 months' imprisonment.  Livingston's sentence was driven in large part by a 7-year statutory mandatory minimum term on the first Section 924(c) charge (Count 3), and a 25-year "stacked" statutory mandatory minimum term on the subsequent Section 924(c) charge (Count 5), both of which were required by statute to be served consecutively to each other and to all other counts.  (See Doc. 466 at 3); 18 U.S.C. § 924(c)(1)(A), (C) (2011).  Livingston appealed his convictions to the Third Circuit Court of Appeals, which affirmed in full.  See United States v. Livingston, 445 F. App'x 550 (3d Cir. 2011) (nonprecedential).  Livingston is currently housed at the medium security Federal Correctional Institution in Butner, North Carolina ("FCI Butner Medium"), and the Bureau of Prisons ("BOP") has calculated May 4, 2041, as his projected release date.  See Find an Inmate, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "09405-067") (last visited Nov. 29, 2021).

In February of this year, Livingston was diagnosed with Stage IV non-small cell lung cancer and given a prognosis of roughly 12 to 18 months to live.  (See Def.

Exs. B-15, B-16, B-18; see also 10/29/21 Tr. 10:2-15).[1]  Livingston filed a request for

compassionate release with the warden at the Federal Medical Center in Butner,

North Carolina ("FMC Butner"), where Livingston was housed at the time, and on

June 1, 2021, the warden wrote to the BOP's general counsel recommending that

"consideration be given" to Livingston's request.[2]  (See Doc. 693-1 at 1).  The BOP

denied Livingston's request six days later, finding—seemingly in contravention

of the available medical records—that Livingston's "life expectancy is considered

indeterminate" and he does not have "end-of-life indicators that would establish a

terminal prognosis."  (See id. at 2-3).

Livingston filed an emergency motion for compassionate release with this

court on July 29, citing his terminal lung cancer diagnosis, the COVID-19 pandemic,

and Congress's recent elimination of the stacked Section 924(c) penalty that added

20 years to Livingston's sentence.  We appointed counsel to represent Livingston

the next day and issued a briefing schedule once counsel entered an appearance.

On October 29, we convened an evidentiary hearing and heard testimony from

---

[1] The court convened a hearing on Livingston's motion for compassionate
release on October 29, 2021, and the court reporter has provided the court with a
rough transcript of that hearing.  Citations to the rough transcript are abbreviated
"10/29/21 Tr. __" and citations to Livingston's hearing exhibits are abbreviated "Def.
Ex. __."  Pagination of the rough transcript may vary from pagination of the official
transcript.

[2] Appointed counsel represents in his opening brief that, of the more than
265 prisoners his office has been appointed to represent for compassionate release
proceedings, Livingston is the only prisoner whose warden has recommended to
the BOP's general counsel that release be considered.  (See Doc. 697 at 1 n.1).

Livingston; his treating oncologist, Andy Scott Carden, M.D. ("Dr. Carden"); and his sister and proposed third-party custodian, Latosha Livingston.

## II.   **Discussion**

Livingston asks the court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239.  Section 3582(c)(1)(A)(i) allows the sentencing court to reduce a term of imprisonment if the court finds, after consideration of the Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

Both the defendant and the Director of the BOP can move for compassionate release under Section 3582(c)(1)(A).  See id. § 3582(c)(1)(A).  But before a defendant can move the court directly, he must either "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or wait for 30 days to lapse from the warden's receipt of a request that the BOP file such a motion.  Id. There is no dispute that Livingston properly exhausted his administrative remedies to the extent his motion is based on his terminal lung cancer diagnosis.[3]  We therefore turn to the merits of Livingston's motion.

---

[3] The government notes, and Livingston concedes, that he has not exhausted the other two grounds cited in his motion: his heightened risk of severe illness from the COVID-19 virus, and the First Step Act's elimination of the stacked penalties for Section 924(c) offenses.  (See Doc. 699 at 3-5; Doc. 702 at 1 n.1).  Although these unexhausted arguments cannot serve as extraordinary and compelling reasons for compassionate release, we may consider them in our analysis of the Section 3553(a) factors.

### A.      Extraordinary and Compelling Reasons

Congress delegated responsibility for defining "extraordinary and compelling reasons" for compassionate release to the United States Sentencing Commission. See 28 U.S.C. § 994(t).  In Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines, the Commission identifies criteria for determining eligibility for a sentence reduction.  See U.S.S.G. § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).[4]  Under Note 1, a prisoner is eligible for compassionate release if they are "suffering from a terminal illness," defined as "a serious and advanced illness with an end of life trajectory."  See id. at cmt. n.1(A)(i); see also 18 U.S.C. § 3582(d)(1) (defining terminal illness for purpose of BOP's familial notice obligation as "a disease or condition with an end-of-life trajectory").  A conclusive prognosis as to life expectancy—i.e., "a probability of death within a specific time period"—is not required.  See U.S.S.G. § 1B1.13 cmt. n.1(A)(i).  Enumerated examples of terminal illness include "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."  See id.

Livingston plainly qualifies as an individual suffering from "terminal illness" as defined by the Guidelines and as contemplated by Congress.  In February 2021,

---

[4] The Guidelines have not been amended since the First Step Act's expansion of Section 3582(c)(1)(A) to permit prisoner-initiated motions.  As a result, the Guidelines' commentary is limited to BOP-initiated motions.  Our court of appeals has concluded that while the Guidelines' policy statements are not binding upon district courts resolving prisoner-initiated motions, courts may still consider the policy statements as a guide.  See United States v. Andrews, 12 F.4th 255, 259-60 (3d Cir. 2021) (collecting cases).  We find the Guidelines' definition of "terminal illness" to be particularly useful, given its consistency with the definition supplied by Congress.  See U.S.S.G. § 1B1.13 cmt. n.1(A)(i); 18 U.S.C. § 3582(d)(1).

Livingston was diagnosed with Stage IV non-small cell lung cancer after a biopsy revealed a "[s]evere diffuse tumor studding throughout the pleural space," as well as "several small tumors in the lung itself in all lobes." (See Def. Exs. B-16, B-18; see also 10/29/21 Tr. 10:2-15). A PET scan in August 2021 found that Livingston's cancer had metastasized to his lymph nodes, liver, and lumbar spine. (See Def. Ex. B-14; 10/29/21 Tr. 10:16-11:23). Livingston does carry a gene mutation that *usually* results in longer life expectancy—approximately four years from date of diagnosis. (See 10/29/21 Tr. 8:24-10:15). Unfortunately, Livingston's cancer has outpaced that more favorable possibility, progressing (*i.e.*, metastasizing) at such an unexpectedly fast rate that Dr. Carden estimates Livingston's life expectancy from the date of diagnosis to be between 12 and 21 months.[5] (See id. at 10:2-15). Accounting for the nine-month lapse between the date of diagnosis and today's date, Livingston's life expectancy is now somewhere between 3 and 12 months. We have little difficulty finding under these circumstances that Livingston has established extraordinary and compelling reasons for compassionate release.

---

[5] The specific gene mutation is anaplastic lymphoma kinase, referred to as "ALK." (See 10/29/21 Tr. 8:24-9:5). Dr. Carden explained the mutation appears in roughly five percent of patients with non-small cell lung cancer, and that it is an "unusual" mutation in that it most often appears in younger patients who have no history of smoking. (See id. at 9:6-17). ALK-positive lung cancer patients whose cancer has not yet metastasized typically have a median life expectancy of four years from date of diagnosis; when an ALK-positive patient's cancer progresses (*i.e.*, metastasizes), their life expectancy is more than halved, decreasing to about 20 or 21 months. (See id. at 16:6-18). Dr. Carden testified that "regardless of [ALK] positivity," a lung cancer patient with metastatic disease like Livingston's "typically [has] on average . . . a life expectancy around twelve to eighteen months." (See id. at 10:4-7). Dr. Carden explained that Livingston's exact life expectancy is difficult to pinpoint because of how quickly Livingston's cancer progressed. (See id. at 24:9-19).

**B.      Section 3553(a) Factors**

Having made a preliminary finding that Livingston is eligible for compassionate release, we must next consider whether the Section 3553(a) factors,[6] as well as any applicable policy statements issued by the Sentencing Commission, support the requested sentence reduction.  <u>See</u> 18 U.S.C. § 3582(c)(1)(A); <u>see also</u> <u>United States v. Pawlowski</u>, 967 F.3d 327, 329-30 & n.6 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

There is no denying Livingston's crimes were serious.  Livingston was involved in two violent armed robberies which were traumatizing to the victims. And as noted at the time of sentencing, Livingston was not a first-time offender: Livingston's criminal record began in his early teens, and he has prior convictions for offenses of escalating seriousness, including a federal firearm conviction for which he was sentenced by the late Judge Caldwell to 60 months' imprisonment. (<u>See</u> Doc. 488 at 11:16-12:5); <u>see also</u> <u>United States v. Livingston</u>, No. 1:98-CR-252, Doc. 44 (M.D. Pa. June 21, 1999)  The nature and circumstances of Livingston's

---

[6] The Section 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence and sentencing range recommended by the United States Sentencing Guidelines; (5) pertinent policy statements issued by the United States Sentencing Commission; (6) "the need to avoid unwarranted sentencing disparities" among similarly situated defendants; and (7) the need for restitution.  18 U.S.C. § 3553(a).

instant offense, coupled with Livingston's criminal history, warrant a substantial term of imprisonment.

At the time of sentencing, the court expressed concern that Livingston had not been adequately deterred by prior sentences and that he presented a danger to the public and a high risk of recidivism based on his criminal record and lack of significant work history. (See Doc. 488 at 13:19-14:6). We initially harbored some of these same concerns on receipt of Livingston's instant motion. Although we cannot know for sure how Livingston will adjust if he is released, our recidivism concerns have been largely mitigated by the fully developed record. Livingston's BOP file reflects that he has incurred no major infractions during his more than 13 years in custody, and his most recent minor infraction was nearly four years ago.[7] (See Doc. 693-1 at 24). Livingston has taken steps to better himself while incarcerated and he completed several educational and vocational programs before programming was stalled due to pandemic protocols. (See id. at 23-24; 10/29/21 Tr. 27:25-28:8).

Livingston also testified compellingly that his terminal diagnosis forced him to reckon with his own mortality and take stock of his life and his actions in a way he had not done before. (See 10/29/21 Tr. 27:11-29:6). He described the impact of his diagnosis on his perspective as "tremendous," and expressed that he now fully

---

[7] During the evidentiary hearing, the government argued that Livingston was recently placed in the special housing unit ("SHU") for disciplinary reasons, militating against release. (See 10/29/21 Tr. 40:21-41:3). Livingston testified he was placed in the SHU as part of the BOP's quarantine procedures following his transfer back to FCI Butner Medium from FMC Butner. (See id. at 26:8-15). The government has not introduced any evidence suggesting Livingston's placement in the SHU was related to a disciplinary infraction.

accepts responsibility for his crimes and the harm that he caused. (See id.) On all of these points, the court found Livingston's testimony to be sincere.

We acknowledge the government still harbors concerns and believes Livingston to be a danger to the public. (See id. at 40:15-41:14). Any residual concern with recidivism and protection of the public will be addressed through modifying Livingston's existing terms of supervised release to restrict his liberty and movement in the community. Specifically, the court will modify Livingston's conditions to include a condition of home confinement with electronic monitoring. The court will also appoint Livingston's sister, Latosha Livingston, as a third-party custodian. We heard from Latosha Livingston during the October 29 evidentiary hearing, and we find her to be a suitable third-party custodian and believe she is prepared to hold her brother accountable to his conditions of release.

Finally, we note that, were Livingston to be sentenced today, his sentencing exposure would be drastically reduced. See Andrews, 12 F.4th at 262 (holding that courts may consider "current sentencing landscape" in Section 3553(a) analysis on compassionate release motion). Livingston is serving an aggregate sentence of 461 months' imprisonment—just over 38 years. (See Doc. 466 at 3). That sentence was largely driven by a "stacked" 25-year mandatory minimum penalty for a subsequent Section 924(c) offense: because Livingston was convicted of two such offenses, he received a 7-year mandatory minimum term on the first and a 25-year mandatory minimum term on the second, both of which were required by statute to be served consecutively to each other and to all other counts. (See Doc. 466 at 3); 18 U.S.C. § 924(c)(1)(A), (C) (2011). Livingston's projected release date, based on his current

sentence, is May 4, 2041.  <u>See</u> *Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "09405-067") (last visited Nov. 29, 2021).

Congress amended Section 924(c) when it enacted the First Step Act of 2018.  <u>See</u> First Step Act of 2018, § 403(a), 132 Stat. at 5221-22.  The revised Section 924(c) provides that the 25-year minimum for subsequent offenses applies *only* if a defendant already had a conviction under Section 924(c) that had become final by the time of the subsequent offense.  <u>See</u> 18 U.S.C. § 924(c)(1)(C)(i) (2021).  As a result, if Livingston were sentenced today, his mandatory minimum sentencing exposure would be at least 20 years shorter, since he would be subject only to a 5-year mandatory minimum on Count 5, rather than the enhanced 25-year term applicable at the time of sentencing.[8]  <u>See</u> 18 U.S.C. § 924(c)(1)(A)(i).  In other words, if Livingston had been sentenced under today's laws, he would have been released by now.  This factor is weighted heavily in the court's assessment of whether compassionate release is warranted.

---

[8] We say "at least" because Livingston also makes a colorable argument that, because the court and not the jury found he "brandished" a firearm, his sentence on first Section 924(c) count, Count 3, would today be reduced from 7 years to 5 years.  <u>See</u> <u>Alleyne v. United States</u>, 570 U.S. 99, 113-16 (2013); <u>see also</u> 18 U.S.C. § 924(c)(1)(A)(i), (ii).  We note that the government does not argue otherwise in its opposition brief.  (<u>See generally</u> Doc. 699).

III.    **Conclusion**

The court concludes that Livingston has established extraordinary and compelling reasons for compassionate release, and that the balance of the relevant Section 3553(a) factors favor a sentence reduction.  To date, Livingston has served 13 and a half years for the crimes adjudicated in this case.  That term is substantial in its own right, but more still when measured against Livingston's life expectancy: assuming Livingston survives 12 more months, which is the high end of his treating oncologist's estimate, he will have spent roughly 30 percent of his life in prison for these offenses.  As noted, any remaining recidivism and public safety concerns can and will be adequately addressed by appropriate conditions of supervised release. For these reasons, and all of the reasons set forth herein, we will grant Livingston's motion for compassionate release.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    November 30, 2021